USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/11/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENT DAVIS,
              Petitioner,

-against-

ADA PEREZ,
              Respondent.

**ORDER**

13 Civ. 4950 (PGG) (SDA)

PAUL G. GARDEPHE, U.S.D.J.:

        On July 23, 2009, a jury sitting in Supreme Court of the State of New York, New York County, convicted Petitioner Kent Davis of first-degree assault and child endangerment. (Trial Transcript ("Tr.") (Dkt. No. 14-4) at 523-26) On September 8, 2009, Petitioner was sentenced to eleven years' imprisonment on the assault count, and one year of imprisonment on the child endangerment count, with the terms to run concurrently. (Sent. Tr. (Dkt. No. 14-4) at 30)

        On June 20, 2013, Petitioner filed a petition, pro se, for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, seeking to set aside his convictions.[1] (Dkt. No. 1) Petitioner argues that he is entitled to habeas relief because (1) he was deprived of his right to present psychiatric evidence; (2) the prosecution asked Petitioner improper questions during cross-examination; (3) the prosecutor made statements in his summation that shifted the burden of proof; and (4) the trial court erred in refusing to charge the jury on the lesser-included offense of second-degree assault. (See id. at 5-10)

---

[1] The Petition was received by this Court on July 16, 2013. Under the prison mailbox rule, however, the day a petitioner submits his petition to prison officials to be mailed is deemed to be the filing date. Houston v. Lack, 487 U.S. 266, 274 (1988); see also Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (pro se petitioner's habeas appeal is deemed to be filed upon delivery to prison authorities).

This Court referred the petition to Magistrate Judge Ronald Ellis for a Report and Recommendation ("R&R"). (Dkt. No. 3) On September 4, 2015, Judge Ellis issued a 33-page R&R recommending that this Court deny the petition.[2] (Dkt. No. 17) For the reasons stated below, the Court will adopt the R&R in its entirety, and Petitioner's Section 2254 petition will be denied.

## BACKGROUND

### I. TRIAL AND CONVICTION

On February 22, 2008, Petitioner repeatedly stabbed his wife with a large kitchen knife during a heated argument in their home. (See Tr. (Dkt. No. 14-2) at 101-08, 318-22) The couple's three-year-old child was present for the assault. (Id. at 318, 320) Petitioner was charged with, inter alia, attempted murder in the second degree, assault in the first degree, and endangering the welfare of a child. (Chanda Aff. (Dkt. No. 12-2) at 174)

Prior to trial, Petitioner submitted a Notice of Intent to Offer Psychiatric Evidence, pursuant to New York Criminal Procedure Law § 250.10(1)(c). Petitioner sought to introduce an evaluation prepared by Dr. Michael D. Fraser, a licensed clinical psychologist, who interviewed Petitioner on February 14, 2009. (Fraser Report (Dkt. No. 12-2) at 185-92) Dr. Fraser opined that Petitioner "did not seem to have a plan to kill his wife," and that the stabbing "appeared to be an impulsive act." (Id. at 191) Dr. Fraser also opined that Petitioner's "mental state at the time of his offense appeared to be highly influenced by a combination of a long-standing pattern of repressed anger in his relationship with [his wife] that built up over time, . . . and the influence of alcohol consumption on [Petitioner]'s part." (Id. at 192)

---

[2] The case was subsequently reassigned to Magistrate Judge Stewart D. Aaron.

2

Dr. Fraser concluded, however, that Petitioner's "behavior was not the result of serious psychiatric impairment," and that he "d[id] not show evidence of significant psychiatric symptoms that would compromise his ability to control his actions." (Id. (emphasis in original)) Indeed, Dr. Fraser emphasized that Petitioner's conduct was not caused by a mental defect or disorder:

> Care should be taken not to infer from this report that [Petitioner] was not responsible for his behavior. The results of this evaluation could find no psychiatric or neuropsychological factors that compromised his behavior or understanding thereof in his commission of this crime.

(Id.)

The People moved to preclude Dr. Fraser's testimony at trial as irrelevant. (See Pre-Trial Conf. Tr. (Dkt. No. 14-1) at 2-8) At a pre-trial conference, the court asked Petitioner to explain the relevance of Dr. Fraser's testimony, given that Dr. Fraser would not opine that that Petitioner "ha[d] some psychiatric illness." (Id. at 2) Defense counsel argued that Dr. Fraser should be permitted to testify that – although Petitioner did "not suffer from a psychiatric [] illness," – he "snapped" and "did not have the intent . . . to commit this crime." (Id. at 3) Defense counsel contended that Dr. Fraser should be permitted "to testify as an expert in the field of clinical forensic psychology in marriage and counseling," because he could "provide information for the jury about battered person syndrome" and would testify that Petitioner "has certain symptoms of that syndrome." (Id. at 4) Defense counsel conceded, however, that Petitioner did not have battered person syndrome. (Id.)

The court initially reserved decision as to Dr. Fraser's proposed testimony (id. at 8), but later precluded him from testifying, concluding that "[h]e cannot say that there is anything, any diagnosable thing, anything that a psychiatrist could say that would negative intent. . . . That is why there is no expert testimony in this case." (Tr. (Dkt. No. 14-2) at 231-32)

3

The court noted that Dr. Fraser's proposed testimony that Petitioner "just kind of got fed up" sounded "more like motive [evidence] than defense [evidence]," because it did not relate to "anything in [Petitioner's] psychiatric or psychological makeup." (Id. at 228)

At trial, Petitioner's wife testified that – after a heated argument with Petitioner – she opened her bedroom window and called out for the police. (Id. at 103-04) She then picked up her cell phone and began dialing 911. She threw the phone away when she saw Petitioner approaching with a kitchen knife, however. Petitioner then stabbed his wife in the left shoulder. (Id. at 105) Petitioner retrieved the phone, "snapped it in half[,] and threw it across the room." (Id. at 106) Petitioner then began punching his wife in the face. After Petitioner's wife fell to the floor, Petitioner jumped on top of her, and a struggle for the knife ensued. (Id. at 106-07) The wife eventually released the knife to avoid further cuts to her hand. Petitioner then stabbed his wife multiple times in the neck. (Id. at 107-08) The couple's four and a half year old daughter witnessed the assault. (Id. at 84-85, 107-08)

Petitioner's defense at trial was that he lacked the requisite criminal intent to commit the charged offenses. (See Tr. (Dkt. No. 14-3) at 422-31) Petitioner testified that he and his wife got into an argument; that he broke her phone when she attempted to call 911 to have him "put out of the apartment"; that he grabbed a kitchen knife to "scare her"; that he waved the knife in front of her; that his wife attempted to grab the knife by the blade and cut herself; and that he stabbed his wife in the shoulder, because he "wanted her to stop yelling at [him]." (Tr. (Dkt. No. 14-2) at 318-22, 324) Petitioner claimed, however, that "wasn't even thinking" when he grabbed the knife, that he "didn't want to hurt" his wife, and that he "just wanted to scare her." (Id. at 322) Petitioner further testified that, when he stabbed his wife, he "wasn't trying to kill her . . . [or] hurt her," and that, "I don't know what I was doing, I just lost it, I just lost my

head at the time, I freaked out." (Id. at 324) Petitioner also testified that, after he stabbed his wife in the shoulder, the next thing he remembered was his wife "falling to the floor and . . . bleeding," and that he "called 911 right away." (Id. at 325)

Although Dr. Fraser did not testify, he was referenced during the trial. During cross-examination, the prosecutor questioned Petitioner about statements he had made to Dr. Fraser during his examination in February 2009. (See Tr. (Dkt. No. 14-3) at 365-69) The prosecutor asked Petitioner, inter alia, why he did not tell Dr. Fraser that he remembered stabbing his wife. (Id. at 368-69) Defense counsel did not object to this line of questioning. (Id.)

During summation, Assistant District Attorney Michelle Warren – repeatedly, and over objections sustained by the court – (1) challenged Petitioner's credibility by arguing that Petitioner withheld information from Dr. Fraser; and (2) argued that Dr. Fraser's absence from the trial reflected Petitioner's strategic decision not to call him as a witness, in an effort to keep incriminating information from the jury:

Now, blacking out is a, almost essentially a medical diagnosis.

OBJECTION. OVERRULED.

And that's why he's at the doctor to see if the doctor will agree that his state of mind –

OBJECTION. SUSTAINED.

He's at the doctor for the doctor to make a decision.

OBJECTION. SUSTAINED.

And he tells the doctor that he remembers up to the point of picking up the knife to scare her, but he doesn't remember anything else. He can't admit to the doctor that stab wound or that he cut her in the shoulder because that clearly doesn't help the blackout because you don't [] stab someone once and then black out for the

5

rest of it, you either black out for all of it or none of it. He knows that. And that's why the doctor is not –

OBJECTION. SUSTAINED.

That's why you never heard from the doctor.

OBJECTION. SUSTAINED.

Like I said, lack of evidence. Defense counsel, you can look at the defense case. Again, I have the burden, but in assessing whether the defendant was telling the truth and whether you should believe the Defense story look at who did not testify.

OBJECTION. SUSTAINED.

Doctor Fra[s]er didn't testify.

OBJECTION. SUSTAINED.

Again, look at who did not testify.

OBJECTION. SUSTAINED.

You can look at lack of evidence.

OBJECTION.

That's true, your honor.

COURT: That's not sustained. That's overruled.

You can look at lack of evidence[,] and I invite you to look at the lack of evidence before you in the defendant's case.

(Id. at 445-48)

Dr. Fraser's absence from the trial was, of course, the result of the People's successful objection to his testimony, and not because of any strategic decision made by defense counsel.

On September 8, 2009, the jury convicted Petitioner of first-degree assault and endangering the welfare of a child. (Tr. (Dkt. No. 14-4) at 523-26) Petitioner was acquitted of

6

the attempted murder charge. (Id.) Petitioner was sentenced to eleven years' imprisonment. (Sent. Tr. (Dkt. No. 14-4) at 30)

## II. PETITIONER'S STATE COURT APPEAL

Petitioner appealed to the Appellate Division, First Department, arguing that: (1) the trial court denied him due process by precluding Dr. Fraser's testimony; (2) pervasive prosecutorial misconduct deprived him of a fair trial; (3) the trial court improperly denied his request to instruct the jury on a lesser-included offense; (4) he was denied due process because the court admitted inadmissible hearsay testimony; and (5) he was entitled to a sentence reduction. (See Appellate Division Br. (Dkt. No. 12-2) at 1-61) On December 8, 2011, the Appellate Division unanimously affirmed Petitioner's conviction and sentence. People v. Davis, 90 A.D.3d 461 (1st Dept. 2011).

On February 7, 2012, Petitioner sought leave to appeal to the New York Court of Appeals, contending that (1) the preclusion of Dr. Fraser's testimony deprived him of due process; and (2) that the trial court erred in refusing to instruct the jury on the lesser-included offense. (Leave Application (Dkt. No. 12-2) at 146-151) The Court of Appeals denied leave to appeal on April 9, 2012. (Order Denying Leave (Dkt. No. 12-2) at 157-58)

On December 20, 2012, Petitioner filed a pro se motion requesting a writ of error coram nobis on the grounds that appellate counsel was ineffective in not raising additional claims in his leave application to the Court of Appeals. (Coram Nobis Mot. (Dkt. No. 12-2) at 159-71) The Appellate Division denied the motion on June 11, 2013. (App. Div. Order (Dkt. No. 12-2) at 183-84)

7

## III. THE PETITION AND JUDGE ELLIS'S REPORT AND RECOMMENDATION

On June 20, 2013, Petitioner timely filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1) Petitioner seeks to set aside his convictions on the following grounds: (1) the trial court's exclusion of Dr. Fraser's testimony violated Petitioner's Sixth and Fourteenth Amendment rights to present a defense; (2) prosecutorial misconduct during the People's cross-examination of Petitioner violated his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments; (3) prosecutorial misconduct during summation violated his Fifth, Sixth, and Fourteenth Amendment rights; and (4) the trial court's refusal to instruct the jury on a lesser-included offense violated Petitioner's Sixth and Fourteenth Amendment rights. (Id. at 5-10)

On August 14, 2013, this Court referred the petition to Magistrate Judge Ellis for a Report and Recommendation ("R&R"). (Dkt. No. 3) On September 4, 2015, Judge Ellis issued a 33-page R&R recommending that this Court deny the petition. (R&R (Dkt. No. 17)) Judge Ellis concluded that the trial court's exclusion of Dr. Fraser's proposed testimony did not justify relief, because that testimony was not "probative of intent." (Id. at 25) Judge Ellis further concluded that Petitioner's remaining claims were procedurally defaulted, because Petitioner had not exhausted available state remedies. (Id. at 12-13) Judge Ellis also concluded that Petitioner's claim of ineffective assistance of appellate counsel did not provide cause that would excuse his failure to exhaust.[3] (Id. at 13-18)

---

[3] Although Judge Ellis found these claims procedurally barred, he nevertheless addressed them on the merits, in part to "address the severity of the prosecutor's misconduct" during her summation. (R&R (Dkt. No. 17) at 27-31) Judge Ellis concluded that the prosecutor's arguments concerning the absence of Dr. Fraser at trial – given that Dr. Fraser's absence was the product of the People's objection to his testimony – were "improper and [constituted] a deprivation of [Petitioner]'s due process rights." (Id. at 31) Judge Ellis further concluded, however, that this Court is "procedurally barred from granting [] relief" on this basis. (Id.)

8

In his R&R, Judge Ellis informed the parties that they had fourteen days from service of the R&R to file any objections, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, and that the failure to do so would result in waiver of review. (Id. at 33)

In a September 23, 2015 letter, Petitioner requested a seventy-day extension of time to file objections to the R&R. (Dkt. No. 19) This Court granted Petitioner's request. (Dkt. No. 20) No objections to the R&R were ever submitted to this Court, however.

## DISCUSSION

Because Petitioner has not filed any objections to the R&R, he has waived his right to review by this Court. See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); see also Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision."); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report."). This Court has nonetheless reviewed Judge Ellis's comprehensive and well-reasoned R&R, and is satisfied that "there is no clear error on the face of the record." Nelson v. Smith, 618 F. Supp. 1186, 1198 (S.D.N.Y. 1985) (citations omitted).

### I. LESSER INCLUDED OFFENSE AND PROSECUTORIAL MISCONDUCT CLAIMS

Judge Ellis determined that Petitioner's lesser included offense and prosecutorial misconduct claims are procedurally defaulted, because Petitioner has not exhausted his state remedies as to these claims. (R&R (Dkt. No. 17) at 12-13) This Court agrees.

9

A.  **The Exhaustion Requirement in 28 U.S.C. § 2254 Proceedings**

"[B]efore a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (citing 28 U.S.C. § 2254(b)(1)(A)). The exhaustion requirement has two components. Parrish v. Lee, No. 10 Civ. 8708 (KMK), 2015 WL 7302762, at *6 (S.D.N.Y. Nov. 18, 2015).

A court must first consider whether petitioner "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.'" Id. (quoting Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)).

> A petitioner may satisfy the fair presentation requirement by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

Carvajal, 633 F.3d at 104 (quoting Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982)).

"'Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.'" Parrish, 2015 WL 7302762, at *7 (quoting Klein, 667 F.2d at 282). In connection with this requirement, "the Supreme Court has held that when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claim procedurally defaulted." Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

10

"In New York, . . . a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005). Additionally, "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." Sparks v. Burge, No. 06 Civ. 6965 (KMK) (PED), 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 28, 2012); see also DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (affirming the "denial of [a] habeas petition on the grounds, inter alia, that [petitioner's] claims were not properly exhausted" where "they were not properly presented to New York's highest court").

Even where a habeas petitioner's claim is procedurally defaulted, however, he "may avoid such a default . . . by showing cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice, i.e., the petitioner is actually innocent." Sweet, 353 F.3d at 141.

### B. Petitioner's Lesser Included Offense Claim

Judge Ellis determined that Petitioner's lesser included offense jury instruction claim is procedurally defaulted, "because [Petitioner] failed to raise [it] in constitutional terms in state court." (R&R (Dkt. No. 17) at 12) This Court agrees with that assessment. In his application for leave to appeal to the New York Court of Appeals, Petitioner only mentioned this claim in a footnote, and as follows:

> Leave should also be granted to determine whether the trial court erred when it refused defense counsel's request that the jury be charged with assault in the second degree as a lesser-included offense of assault in the first degree. The trial court had acknowledged that the injuries might not rise to the level of serious physical injury and agreed to charge attempted assault in the first degree as a lesser-included. Leave should be granted to determine whether the court erred

11

when it accepted the prosecution's argument that [Petitioner] must have intended
to cause serious physical injury because the injuries were serious.

(Leave Application (Dkt. No. 12-2) at 150 n.6 (emphasis in original))

As Judge Ellis correctly observed, however, Petitioner's footnote "did not cite any relevant constitutional provisions," or "fram[e] the claim" in a way that "call[s] to mind any specific right protected by the Constitution." (R&R (Dkt. No. 17) at 12) Accordingly, the claim is procedurally defaulted. See Carvajal, 633 F.3d at 104.

### C. Petitioner's Prosecutorial Misconduct Claims

Judge Ellis determined that "Petitioner's claims of prosecutorial misconduct are unexhausted, because these claims were not presented to the [New York] Court of Appeals." (R&R (Dkt. No. 17) at 12) This Court likewise agrees with that conclusion. Although Petitioner raised these claims in his brief to the Appellate Division (see App. Div. Br. (Dkt. No. 12-2) at 34-42), his application for leave to appeal to the New York Court of Appeals does not make any arguments concerning prosecutorial misconduct. (Leave Application (Dkt. No. 12-2) at 146-151) Because "Petitioner [is] entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals," Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001); see also N.Y. Ct. R. 500.10(a), he no longer has an available remedy in state court to exhaust these claims, see Sparks, 2012 WL 4479250, at *4, and his claims of prosecutorial misconduct are procedurally defaulted. See Sweet, 353 F.3d at 139.

### D. Cause for Procedural Default

A Section 2254 petitioner may avoid procedural default by demonstrating "cause and prejudice." Sweet, 353 F.3d at 141. Here, Petitioner claims that appellate counsel's ineffective assistance caused his failure to exhaust his lesser included offense and prosecutorial misconduct claims. (See Petition (Dkt. No. 1) at 7-10) As Judge Ellis correctly concluded,

12

however, Petitioner cannot excuse his procedural defaults on that basis. (R&R (Dkt. No. 17) at 13-18)

> The Second Circuit has explained that,
>
> > [i]n order to establish attorney dereliction as cause, a petitioner must meet the standards for showing constitutionally ineffective assistance of counsel. A defendant in a criminal case has no constitutional right to counsel on a discretionary state appeal. Because [a petitioner] ha[s] no right of appeal to the New York Court of Appeals, his attorney's failure to assert his present claims to that Court was not a failure of constitutional dimension and hence cannot constitute cause.

DiGuglielmo, 366 F.3d at 135 (internal citations omitted). Accordingly, appellate counsel's alleged ineffective assistance does not constitute cause to excuse Petitioner's procedural default.[4]

---

[4] A Section 2254 petitioner may also avoid procedural default by demonstrating that "failure to consider the claim will result in a fundamental miscarriage of justice, i.e., the petitioner is actually innocent." Sweet, 353 F.3d at 141.

The Second Circuit has explained that

> the fundamental miscarriage of justice exception is extremely rare and should be applied only in the extraordinary cases. [A]ctual innocence means factual innocence, not mere legal insufficiency. To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.

Id. at 142 (internal quotation marks and citations omitted).

Here, the evidence is such that this Court cannot find that Petitioner was "actually innocent" or that his convictions constitute a "miscarriage of justice." The jury heard ample evidence of Petitioner's guilt. Petitioner's wife testified as to the multiple serious stab wounds that Petitioner inflicted on her shoulder, hand, neck, and other parts of her body. (Tr. (Dkt. No. 14-2) at 103-08) In testifying, Petitioner largely confirmed his wife's account, but contended that he lacked criminal intent because he had mentally "snapped." (Tr. (Dkt. No. 14-3) 318-25) Given the evidence, the jury was free to reject Petitioner's claim that he did not intend to injure his wife.

Accordingly, the "miscarriage of justice" exception is not applicable.

13

## II. EXCLUSION OF DR. FRASER'S TESTIMONY

Petitioner claims that the trial court's refusal to allow Dr. Fraser to testify deprived Petitioner of his right to present his defense that he lacked the requisite intent to commit first degree assault. (Pet. Br. (Dkt. No. 1-1) at 7-10) Judge Ellis determined that this claim lacks merit, because, inter alia, "Dr. Fraser's testimony would have centered on [Petitioner]'s troubled relationship with his wife and his lack of impulse control: issues that are . . . no[t] probative of intent." (R&R (Dkt. No. 17) at 25) This Court finds no error in Judge Ellis's analysis or conclusion.

"The Constitution guarantees 'a meaningful opportunity to present a complete defense' at trial." United States v. Rivera, 799 F.3d 180, 190–91 (2d Cir. 2015) (quoting Holmes v. South Carolina, 547 U.S. 319, 324 (2006)). "Whether the exclusion of evidence violates a defendant's right to present a defense depends upon whether the omitted evidence, evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist." Id. at 191 (internal quotation marks, brackets, and citations omitted).

Under New York law, a defendant may present psychiatric testimony that is probative of whether he possessed the requisite mens rea, even if that testimony does not support an insanity defense. See Singh v. Greene, No. 10-CV-4444 JFB, 2011 WL 2009309, at *19 (E.D.N.Y. May 20, 2011) (citing People v. Segal, 54 N.Y.2d 58, 66 (1981)); People v. Morales, 125 A.D.2d 605, 608 (1st Dept. 1986) ("It is [] error to exclude expert testimony which, although not necessarily relevant to the statutory insanity defense, is nevertheless probative of whether the defendant possessed, at the time of the crime, the required criminal intent.").

A person is guilty of first degree assault under New York law when

> (1) [w]ith intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument; or (2) [w]ith intent to disfigure another person seriously and permanently, or to

14

destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person . . .; or (3) [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person. . . .

N.Y. Penal Law § 120.10. New York defines intent as "a conscious objective [] to cause such result or to engage in such conduct." N.Y. Penal Law § 15.05(1). Intent "does not require premeditation, advanced planning, or a prolonged period of intent." Dell'Aera v. James, No. 12-CV-00344 JFB, 2012 WL 6632673, at *6 (E.D.N.Y. Dec. 20, 2012).

Here, Dr. Fraser concluded that Petitioner "did not seem to have a plan to kill his wife," and that "the stabbing appeared to be an impulsive act fueled by the heat of the argument in that moment." (Fraser Report (Dkt. No. 12-2) at 191) As Judge Ellis correctly observed, however, Dr. Fraser's conclusions are not probative of Petitioner's intent (R&R (Dkt. No. 17) at 25), because "intent under [New York law] does not require premeditation or cool calculation." (Id. at 24) Accordingly, Dr. Fraser's proposed testimony does not "create[] a reasonable doubt that did not otherwise exist," Rivera, 799 F.3d at 191, and there is no clear error in Judge Ellis's conclusion that the exclusion of Dr. Fraser's testimony does not justify habeas relief.

## CONCLUSION

For the reasons stated above, this Court adopts Magistrate Judge Ellis's R&R in its entirety and denies Petitioner's petition for a writ of habeas corpus. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue under 28 U.S.C. § 2253. This Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369

U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a non-frivolous issue).

The Clerk of Court is directed to (1) terminate any outstanding motions and close this case; and (2) mail a copy of this order to pro se Petitioner Kent Davis.

Dated: New York, New York
      April 11, 2018        SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge